IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TIMOTHY L. COLEMAN,

     Petitioner,

     v.

MARGARET BRADSHAW, Warden,

     Respondent.

Case No. 3:03cv299
JUDGE SARGUS
Magistrate Judge Abel

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this

Court a habeas corpus action pursuant to 28 U.S.C. §2254.  This matter is before the Court upon

petitioner's second motion for leave to conduct discovery (Doc. # 97-1), respondent's response in

opposition (Doc. # 99-1), and petitioner's reply (Doc. # 103).

I. Overview

Petitioner argues that he is actually innocent of the murder for which he was convicted

and sentenced to death and that the prosecution knowingly prosecuted an innocent man.

Specifically, petitioner argues that, after he was convicted and sentenced, another man on Ohio's

death row, William Sapp, signed an affidavit admitting that he murdered Melinda Stevens,

providing certain details about the murder tending to bolster his admission, and stating that he

had told Springfield police that he had committed the murder.  Subsequently, however, Mr. Sapp

denied during an interview with Springfield police that he had ever confessed to the murder or

that he had ever told Springfield police that he had committed the murder.  Petitioner seeks

discovery on his actual innocence claim, (first ground for relief), his *Brady* claim, (second

ground for relief), and his claims of ineffective assistance of trial counsel during the culpability

phase, (third ground for relief).

On September 26, 2006, this Court issued an opinion and order granting petitioner's first request for leave to conduct discovery. (Doc. # 54.) With respect to this Court's conclusion that petitioner was entitled to any inculpatory statements that William Sapp may have made to any Department of Rehabilitation and Correction ("DRC") employees or that might otherwise be documented in DRC files, petitioner now argues that discovery he has conducted to that end has revealed that certain other parties may be in possession of DRC records subject to this Court's discovery order. (Doc. # 97, at 4.) Petitioner further argues that his deposition of the Clark County Prosecutor has revealed that the Clark County Sheriff's Office might be in possession of documents relating to statements made by Sapp. (*Id.*) Finally, with respect to his claim of ineffective assistance of counsel, petitioner argues that his deposition of trial counsel Jon Doughty "revealed the need for additional discovery efforts." (*Id.*)

Respondent opposes petitioner's new discovery requests, essentially arguing that petitioner has obtained nothing from the discovery this Court already granted and that coming up empty-handed should not justify a grant to continue searching. (Doc. # 99-1.)

II.

The discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply in habeas corpus actions. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). In *Harris v. Nelson*, 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings. As a result of the holding in *Harris*, the

2

Rules Governing Section 2254 Cases In United States District Courts were promulgated in 1976.

Specifically, Rule 6(a) provides--

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief....'" *Bracy*, 520 U.S. at 908-909 (quoting *Harris*, 394 U.S. at 300). *See also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Under this standard, the Court will now consider of petitioner's discovery requests.

### A. Claims of Actual Innocence and Alleged *Brady* Violations

Petitioner argues in his first ground for relief that he is actually innocent of the murder Melinda Stevens and that his conviction and death sentence violate his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (Petition, Doc. # 9, at ¶¶ 1-6). Petitioner argues in part:

> William Sapp confessed to killing Melinda Stevens. He described the crime in detail. He identified the murder weapon. He knows the location of the gunshot wounds. Further he provided a detailed description of both the crime scene and Ms. Stevens. (<u>See</u> Successor Post-Conviction Petition, New Trial Motion, Rule 60(b) motion, case no. 96-CR-0142 and Post-Conviction Petition and New Trial Motion, case no. 95-CR-0484, Ex. A).

(Petition, Doc. # 9, at ¶ 2). Petitioner argues that he requested extensive discovery in connection with his successor postconviction action, motion for a new trial, and motion for relief from judgment, and that the state trial court granted only DNA testing on the rape kit performed on

3

Melinda Stevens and on a beer bottle found near her body, (neither of which produced results), as well as augmentation of an audio-taped statement made by petitioner to police, which tape has since turned up missing.

In his second ground for relief, petitioner argues that the state suppressed material exculpatory evidence in violation of his due process rights as set forth in *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). (Petition, Doc. # 9, at ¶¶ 7-15). Petitioner argues that, in spite of his discovery requests for exculpatory evidence prior to his trial and in connection with his postconviction action, the Clark County Prosecutor failed to turn over evidence identifying William Sapp as the perpetrator of the offense for which petitioner was convicted and sentenced to death. Specifically, petitioner alleges that the prosecution had in its possession a letter by William Sapp to Una Gail Timmons in which he claimed to have killed a woman "off of Pleasant," which petitioner asserts is a reference to the murder of Melinda Stevens, who was killed behind Riddle's Ribs off of Pleasant Street; and that Sapp claimed to have confessed to the Springfield Police Department that he had killed Ms. Stevens.

In order to determine whether petitioner is entitled to conduct discovery on his claims, the Court initially must identify the essential elements of his claims. *See Bracy*, 520 U.S. at 904. Assuming without deciding that a freestanding claim of actual innocence is cognizable in federal habeas corpus, it appears that a petitioner would have to "convince a court that new facts unquestionably establish" his innocence. *Hartman v. Bagley*, 333 F.Supp.2d 632, 652 (N.D. Ohio 2004), citing *Schlup v. Delo*, 513 U.S. 298, 316 (1995). That is, a petitioner would have to present a "truly persuasive demonstration of 'actual innocence,'" and the "threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera v. Collins*, 506 U.S.

4

390, 417 (1993); *see also House v. Bell*, 126 S.Ct. 2064, 2086-87 (2006).[1]  Petitioner need not

prove these elements; rather, he must show that if the facts are developed through the discovery

he seeks, he could prove a *Brady* violation and would be entitled to relief. *See Harris, supra*, 394

U.S. at 299.

Regarding the essential elements of a *Brady* claim, the rule in *Brady* requires the

government "to turn over evidence in its possession that is both favorable to the accused and

material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987).  In *Giglio v.*

*United States*, 405 U.S. 150, 154 (1972), the Supreme Court went on to hold that the *Brady* rule

includes evidence that might impeach the credibility of state witnesses.  Materiality is determined

by asking "whether the *Brady* violation undermines confidence in the verdict, because there is a

reasonable probability that there would have been a different result had the evidence been

disclosed." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).  Again, petitioner need not prove

these elements; rather, he must show that if the facts are developed through the discovery he

seeks, he could prove a *Brady* violation and would be entitled to relief. *See Harris, supra*, 394

U.S. at 299.

In keeping with the well settled principle that habeas petitioners are not entitled to go on a

fishing expedition in search of damaging evidence, Rule 6's "good cause" standard requires

petitioner to at least attempt to identify what he expects to uncover through his discovery

requests. *Williams v. Bagley*, 380 F.3d 932, 976 (6th Cir. 2004).  With respect to *Brady* claims

---

[1]  Several courts have hinted that this dicta in *Herrera* left open the possibility of entertaining in federal habeas corpus a freestanding claim of actual innocence even following a state trial otherwise free of constitutional error. *See, e.g., Hartman v. Bagley, supra*, 333 F.Supp.2d at 653; *Madrigal v. Bagley*, 276 F.Supp.2d 744, 758 (N.D. Ohio 2003), *aff'd* 413 F.3d 548 (6th Cir. 2005).

and proving that discovery is warranted thereon, the Court is mindful of the difficulties inherent in describing what facts the petitioner hopes to uncover or develop from files that were never disclosed in the first place. But these difficulties do not erase petitioner's duty to state with some specificity what he intends to find or prove from his discovery requests. Pleading a claim under *Brady* does not automatically entitle a petitioner to unfettered, unqualified access to the government's files in the hopes that he will find something useful. With these principles in mind, the Court will examine each of petitioner's discovery requests.

First, petitioner requests the following depositions and records from the prosecution and law enforcement relating to statements made by William Sapp:

> 1.    Conduct a deposition of the appropriate person at Mansfield Correctional, who can identify whether correctional officers would have been required by the institution's policy to commit to writing any confession made by inmates; or whether the documentation of such confessions would have been discretionary.
>
> 2.    Conduct records deposition or subpoena duces tecum of the Clark County Sheriff's office files maintained and relating to statements made by William Sapp.

(Doc. # 97, at 10.)

As he did in connection with his first motion for leave to conduct discovery, petitioner argues generally that he should succeed on his first and second grounds. Petitioner asserts that the affidavit by William Sapp in which Sapp confessed to the murder of Melinda Stevens and stated that he had confessed as much to law enforcement years earlier by itself constitutes good cause for petitioner's discovery requests relating to his actual innocence and *Brady* claims. Petitioner also points to exhibits demonstrating that Sapp was preying on women in the Springfield area at the time of Ms. Stevens's murder, that Sapp was entrenched in the Springfield crack trade, and that Sapp had written a letter claiming that he had committed a murder "off of

Pleasant Street." Petitioner argues that the State failed to disclose any of this information to petitioner during pretrial discovery.

In support of his second motion for leave to conduct discovery, petitioner argues that during the deposition of Clark County Prosecutor Steven Schumaker, Mr. Schumaker indicated that the Clark County Sheriff's office might have in its possession documents relating to statements by William Sapp. (Doc. # 97, at 10.) Petitioner further argues that during the records deposition of Mansfield Correctional Facility's records custodian Susan Shafer, Ms. Shafer indicated that she did not know whether statements, including confessions, made by William Sapp would have been recorded in Sapp's file by corrections officers.

Respondent again emphasizes that the state courts rejected not only petitioner's claim of actual innocence as "preposterous," but also the affidavit by fellow death row inmate William Sapp as "so improbable as to constitute no credible evidence." (Doc. # 99, at 1.) Regarding petitioner's request for records that might be in possession of the Clark County Sheriff's office, respondent essentially disputes petitioner's assertion that Mr. Schumaker testified to anything during his records deposition from which it could reasonably be gleaned that the Clark County Sheriff's office has statements by William Sapp over and above what the Clark County Prosecutor's Office already produced. (Doc. # 99, at 2.) Regarding petitioner's request to depose someone at Mansfield Correctional, respondent asserts that petitioner has come up empty-handed after fishing through Sapp's DRC records, and now seeks additional discovery from prison officials "so that he can have an excuse why Sapp's records do not show inculpatory statements...." (Doc. # 99, at 2-3.) Respondent also argues that petitioner has never availed himself of copies "of the 8 hour videotaped statement of Bill Sapp, nor any of Sapp's other

statements, that for nearly the past decade has been part of the public record with the Clerk of Courts." (Doc. # 99, at 2.) Finally, respondent argues extensively that the deposition of Attorney Joseph Bodine has cast even more doubt over William Sapp's affidavit than already existed. (Doc. # 99, at 3-8.)

Petitioner disputes respondent's assertion that he has obtained nothing from the discovery conducted so far, insisting that a motion for additional discovery is not the arena for him to present new evidence. (Doc. # 103, at 2.) Petitioner also takes issue with respondent's assertion that he has looked through Sapp's prison records and has come up with nothing, stating that respondent has no way of knowing what petitioner has done or not done in this regard, that petitioner has not received the complete file, and that questions have arisen from the deposition of records custodian Susan Shafer about whether the type of information that petitioner seeks, *i.e.*, inculpatory statements, would be contained in Sapp's DRC files. (Doc. # 103, at 2-3.) Petitioner notes that he has transcripts of the video-taped statements by Sapp for which respondent assails him for not seeking. (Doc. # 103, at 3.) Finally, petitioner asserts that respondent's arguments concerning the deposition of Attorney Joseph Bodine involve mischaracterizations, misstatements, and are unresponsive to petitioner's request for additional discovery. (Doc. # 103, at 4-5.)

The Court is satisfied that petitioner has demonstrated good cause for his request for records in possession of the Clark County Sheriff's office relating to statements made by William Sapp, but not for his request to depose someone at Mansfield Correctional regarding whether institution policy requires, or leaves up to the discretion of, correction officers to document in DRC files any inculpatory statements made by inmates.

8

In its September 26, 2006 order granting in part and denying in part petitioner's first motion for leave to conduct discovery, this Court concluded that petitioner was entitled to records of any statements, in written, videotape and/or audiotape form, given by William Sapp to the Springfield Police Department, the Clark County Prosecutor's Office, the Shelby County Prosecutor's Office, or the Shelby County Police from January 1996 through April 1997, and records from the same agencies regarding any statements by William Sapp, in any form, relating to a murder committed that included any of the following details: committed in the winter; committed in an alley; committed with a gun; victim is a black female; or committed within a two-block radius of Pleasant Street and Wittenberg, Springfield, Ohio. (Doc. # 54, at 15.) This Court found good cause for that discovery request because it was reasonable to presume from facts and evidence in the record–namely, Sapp's August 3, 2001 affidavit claiming to have killed Melinda Stevens and a follow-up interview with Springfield Police Chief Steve Moody during which Sapp spoke with no apparent inhibition about murders or assaults he had committed–that William Sapp had a penchant for making inculpatory statements. (Doc. # 54, at 15.) This penchant, the Court concluded, provided good cause for the discovery request not only to explore the validity of Sapp's August 3, 2001 affidavit, but also to determine whether law enforcement officers ever had in their possession and failed to disclose to petitioner statements by Sapp confessing to, or otherwise implicating himself in, the murder for which petitioner was prosecuted and sentenced to death. (Doc. # 54, at 15-16.)

Those same reasons support petitioner's request for any such records in the possession of the Clark County Sheriff's Office–an entity that was not included in petitioner's initial request for discovery, but that subsequently was identified by Clark County Prosecutor Steven

Schumaker as possibly possessing such records. The Court can only assume that petitioner failed to include this entity in his initial discovery request because he had no reason to believe that the Clark County Sheriff's Office possessed such records. In any event, his request for any such records from that entity is narrowly tailored and reasonable, based on facts learned during the records deposition of the Clark County Prosecutor. (*See, e.g.*, Doc. # 99-2, at 3, 5.) Mr. Schumaker emphasized that the complete record of statements made by William Sapp would be contained within the court record of his prosecutions, and that some of the items within that court record would not be within Mr. Schumaker's control but might be within the control/records of the Springfield Police Department or the Clark County Sheriff's Office. Of those two entities, the former was already encompassed in this Court's original discovery order, while the latter was not. Mr. Schumaker's testimony during his records deposition, along with the reasons that originally provided good cause for discovery of the statements identified above, provide good cause for any such statements in possession of the Clark County Sheriff's Office.

Petitioner has failed, however, to show good cause for his request to depose someone at Mansfield Correctional regarding whether institution policy requires, or leaves up to the discretion of, correction officers to document in DRC files any inculpatory statements made by inmates. In short, petitioner's request is too tenuous. In its September 26, 2006 discovery order, this Court concluded that petitioner was entitled to any inculpatory statements made by William Sapp in DRC records. (Doc. # 54, at 11-12.) In so finding, however, this Court denied petitioner's requests for a list of all DRC employees with whom Sapp had interacted since his incarceration on death row and for all DRC records relating to Sapp, explaining that petitioner's entitlement to any inculpatory statements made by William Sapp documented within DRC

10

records created a duty for respondent to produce them, not a right for petitioner to peruse for them. (Doc. # 45, at 12.) The deposition that petitioner now seeks to conduct strikes this Court as a similarly unwarranted request.

Without expressing any opinion as to what petitioner may or may not have discovered from DRC files to date, the Court is not of the view that petitioner has demonstrated a need, within the confines of Rule 6's "good cause" standard, for the deposition he seeks to conduct. Petitioner asserts that because Mansfield Correctional's records custodian, Susan Shafer, indicated during her records deposition that she did not know whether statements, including confessions, made by William Sapp would have been recorded in Sapp's DRC file by corrections officers, good cause exists for petitioner to now depose someone at Mansfield Correctional who could verify whether institution policy would require any confessions or statements by an inmate to correction officers to be documented in that inmate's DRC file. Petitioner asserts that this discovery is necessary enable him to gain access to such statements, but petitioner has not demonstrated, and it is not otherwise apparent to the Court, how the discovery he seeks would assist him in this regard. In other words, the Court is not persuaded that the discovery petitioner seeks would yield any facts or evidence that would assist him in bolstering his claims or assist the Court in ruling on his claims.

Petitioner seeks to depose "the appropriate person at Mansfield Correctional, who can identify whether correctional officers would have been required by the institution's policy to commit to writing any confession made by inmates; or whether the documentation of such confessions would have been discretionary." If the proposed deponent answers that query in the positive, that still provides no guarantee that any inculpatory statement made by William Sapp to

11

a correction officer was in fact documented in Sapp's DRC file. If the proposed deponent answers that query in the negative, then petitioner still has not, in this Court's view, established good cause for the fishing expedition that this Court has already rejected–namely, a list of every DRC employee with whom Sapp has interacted since being on death row in the hopes of finding someone, anyone, to whom Sapp may have confessed to the murder of Melinda Stevens. If the proposed deponent says that there is no policy or that she does not know whether there is such a policy, then neither petitioner nor this Court has learned anything helpful regarding petitioner's actual innocence or *Brady* claims.

A claim of actual innocence made by a petitioner on death row is a most serious matter. And in light of the seriousness of this case and those claims, this Court would prefer to err on the side of gathering too much evidence, rather than too little. But "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), and even indulging petitioner every benefit of the doubt, the Court cannot find that he has demonstrated good cause for his request to depose the appropriate person at Mansfield Correctional who can identify whether correctional officers would have been required by the institution's policy to commit to writing any confession made by inmates. As noted above and in this Court's first discovery order, petitioner's entitlement to any inculpatory statements by William Sapp documented in DRC files creates a duty for respondent to produce them, not a right for petitioner to peruse for them.

### B. Ineffective Assistance of Counsel

Petitioner argues in his third ground for relief that he was denied his right to the effective assistance of counsel at the trial phase of his capital case. (Petition, Doc. # 9, at ¶¶ 16-38.)

Petitioner argues that, in spite of the fact that no physical evidence linked him to the crime, defense counsel performed unreasonably and to his prejudice by failing to challenge the State's case. Specifically, according to petitioner, defense counsel failed to explore and emphasize to the jury inconsistencies in the testimony of numerous state witnesses; failed to marshal compelling evidence provided by the State during pretrial discovery, including evidence pointing to alternative suspects; failed to investigate deals or promises that may have been made to inmates who testified against petitioner; and failed to look into other evidence of improper police influence. Petitioner argues that defense counsel also demonstrated racial animus and a lack of appropriate attention to petitioner's case, conducted inadequate voir dire, and failed to attempt to sever or try to the trial court the charge against petitioner of possessing a weapon while under disability.

In order to determine whether petitioner is entitled to conduct discovery on this claim, the Court must identify the essential elements of this claim. *Bracy*, 520 U.S. at 904. The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong of the *Strickland* test, the Court notes that, "[b]ecause of the difficulties inherent in making the

13

evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

To establish the second prong of the *Strickland* test, *i.e.*, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the Court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

Inherent in counsel's responsibilities is the duty to investigate. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland, supra*, 466 U.S. at 691; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992); *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994)(failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted); *Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992)(reasonable investigation was lacking, so counsel's performance was deficient).

In its September 26, 2006 discovery order, this Court granted petitioner leave to depose trial attorney Jon Doughty, noting that facts and evidence before the Court provided at least some basis for questioning counsel's culpability phase performance, and explaining that "[i]nformation about what strategy petitioner's defense attorneys formulated in connection with the culpability phase of his trial and what investigation was conducted to arrive at and implement that strategy is uniquely in possession of those defense attorneys." (Doc. # 54, at 26.) That said, the Court

14

denied the many other discovery requests that petitioner made in support of his claim of ineffective assistance of counsel. Noting that petitioner must satisfy both prongs of the *Strickland* test and that trial counsel was in the best position to present relevant information about decisions, actions, and omissions defense counsel had made during the culpability phase of the trial, this Court stated that "[s]hould petitioner succeed in making a prima facie showing that trial counsel's performance was unreasonably deficient, the Court would be willing to entertain a good faith motion for supplemental discovery."

Having deposed trial attorney Jon Doughty, petitioner complains that Doughty testified that he was unable to recall most of the information related to petitioner's trial and that Doughty's trial file was particularly sparse. (Doc. # 97, at 13.) As a result, petitioner requests the following additional discovery in order to further develop facts supporting his claim that he was prejudiced by ineffective assistance of counsel at the trial phase.

> 3. Records deposition or subpoena duces tecum of the prosecutor's trial file and or deposition of trial prosecutors for the purpose of identifying information furnished to trial counsel during pre-trial discovery;
>
> 4. Records deposition or subpoena duces tecum of prosecution's file for the purpose of discovering any deals provided to, or promises made to, witnesses, or their family members or friends, in exchange for testimony against Coleman in his capital case and/or his aggravated trafficking case;
>
> 5. Records deposition or subpoena duces tecum of the original letter written by Timothy Coleman and relied upon by Steve Kasler during his trial testimony;
>
> 6. Records deposition or subpoena duces tecum of the Clark County Jail records and the Department of Rehabilitation and Correction records relating to pre-trial attorney visitations with Timothy Coleman;
>
> 7. Records deposition or subpoena duces tecum of Clark County Probation's file relating to Fayette Strodes;

8.     Deposition of the appropriate, knowledgeable Ameritech/SBC[2] employee regarding State's Exhibit U;

9.     Deposition of trial investigator, George Belcher.

(Doc. # 97, at 13.) Petitioner demonstrates good cause for only one of these requests–namely, the request to depose trial investigator George Belcher.

With the exception of the request to depose trial investigator George Belcher, these are the same discovery requests that this Court rejected in its first discovery order on the ground that petitioner would first have to make a prima facie showing that trial counsel's performance was unreasonably deficient before this Court would be willing to entertain a good faith motion for supplemental discovery. (Doc. #54, at 27.) Petitioner has not yet made that showing through the discovery he sought and was granted. Petitioner has not demonstrated, and the Court is not otherwise persuaded, that the discovery requests set forth above, with the exception of the request to depose trial investigator George Belcher, would assist him in developing facts to make a prima facie showing that his trial counsel's performance was unreasonably deficient. The Court stated in its previous discovery order that the only information that these discovery requests would likely reveal would pertain to the prejudice prong of the *Strickland* test. (Doc. # 54, at 27.) Petitioner all but concedes the same, arguing in the instant motion that he requests the discovery set forth above–not in order to further develop facts that support his claim that his trial attorney's performance was unreasonably deficient–but "in order to further develop facts that support [his] claim that he was prejudiced by ineffective assistance of counsel at the trial phase."

---

[2]     Petitioner explains, in connection with this discovery request, that "During the time period in question, the telephone company was Ameritech. However, a subsequent merger between SBC and Ameritech resulted in a name change. Thus counsel would seek leave to depose the appropriate employee of the company, under its current corporate name." (Doc. # 97, at 13 n.1.)

(Doc. # 97, at 13-14.)  Neither Mr. Doughty's inability to recall information about petitioner's trial, nor the sparseness of Mr. Doughty's trial file, establish good cause for the discovery requests that this Court already rejected.

That said, for the same reasons that this Court found that petitioner was entitle to depose trial attorney Jon Doughty, this Court finds that petitioner has demonstrated good cause to depose trial investigator George Belcher.  In its September 26, 2006 discovery order, this Court stated that petitioner had at least some basis for questioning counsel's trial phase performance, that the record did not indicate whether counsel's decisions and omissions were calculated and reasonable or neglectful and unreasonable, and that "those questions can be answered only by petitioner's trial attorneys, one of whom, James Doughty, is now deceased."  (Doc. # 54, at 26-27.)  Although it is *usually* the case that "[i]nformation about what strategy petitioner's defense attorneys formulated in connection with the culpability phase of his trial and what investigation was conducted to arrive at and implement that strategy is uniquely in possession of those defense attorneys," (Doc. # 54, at 26), it is not *always* the case.  And in this case, information revealed during the oral and records deposition of trial attorney Jon Doughty provides good cause to believe that there may be another source for this information–namely, a deposition of trial investigator George Belcher.

Jon Doughty agreed during his deposition that George Belcher "probably" conducted most of the investigation for the defense in petitioner's murder trial.  (Doc. # 97-2, at 19.)  Mr. Doughty also guessed, although he could not recall specifically, that Mr. Belcher's investigation revealed a strong case against petitioner.  (Doc. # 97-2, at 36.)  Exhibits E and D to the transcript of the deposition of attorney Jon Doughty reveal that Mr. Belcher received permission to visit at

the Clark County jail petitioner, James Strodes, and Charles Foster, Jr. (Doc. # 97-3, at 6-7.) Finally, the invoice that Mr. Belcher submitted to defense counsel reveals that he spent two hours in conferences with defense counsel, five hours reviewing materials in petitioner's case, and five hours locating and interviewing witnesses. (Doc. # 97-3, at 8.) It is reasonable to presume from this evidence that discussions or other communications between trial counsel and George Belcher, as well as investigation that Mr. Belcher conducted in connection with the case, might reveal certain information that Jon Doughty was unable to recall during his recent deposition, such as why the decision was made to ask permission for George Belcher to be able to visit James Strodes and Charles Foster, Jr., whether Belcher ever visited them or conducted any investigation relating to them, what information, if any, he learned about them, and whether he conveyed any information about them to trial counsel. Such information might explain any alleged deficiencies in trial counsel's cross examination of three of the state's witnesses who may have been related to potential suspect James Strodes, or why trial counsel failed to discover or marshal evidence pointing to Charles Foster, Jr. as another possible suspect in the murder of Melinda Stevens. In short, there is reason to believe that Mr. Belcher might be able to supply much of the information that Jon Doughty could not regarding decisions that trial counsel made and what sort of investigation or information supported those decisions. For that reason, the Court finds that petitioner has established good cause for his request to depose trial investigator George Belcher.

III. Conclusion

For the foregoing reasons, petitioner has demonstrated good cause under Rule 6 of the Rules Governing Section 2254 Cases to conduct the following discovery:

18

2.    Conduct records deposition or subpoena duces tecum of the Clark County Sheriff's office files maintained and relating to statements made by William Sapp.

9.    Deposition of trial investigator, George Belcher.

Petitioner shall have two (2) months from the date of this order to complete this discovery.

Thus, petitioner's second motion for leave to conduct discovery, (Doc. # 97), is

**GRANTED in part and DENIED in part**.

3-15-2007
**DATE**

**EDMUND A. SARGUS, JR.**
**United States District Judge**