IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TIMOTHY L. COLEMAN,

    Petitioner,

    v.                                                  Case No. 3:03-cv-299
                                                            JUDGE SARGUS
MARGARET BRADSHAW, Warden,         Magistrate Judge Abel

    Respondent.

**OPINION AND ORDER**

    Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. §2254. This matter is before the Court upon petitioner's motion to compel BCI's compliance with court-ordered discovery (Doc. # 86) and the opposition of non-party BCI (Doc. # 100). The Court will defer ruling on petitioner's motion until a privilege log is filed by non-party BCI and counsel for the Warden-Respondent.

    In its September 26, 2006 discovery order, this Court authorized petitioner to collect "all records" in the possession of the Ohio Bureau of Criminal Investigation and Identification ("BCI") relating to the testing of the rape kit performed on the victim and a Colt 45 beer bottle found near the victim's body. (Doc. # 54, at 17-18.) Petitioner contends that, during a records deposition conducted on November 30, 2006, BCI deponent D. Steven Greene stated several times that BCI was not providing all documents in its possession relating to those pieces of evidence. (Doc. # 86, at 2.) Subsequent correspondence between petitioner's counsel and BCI's counsel revealed that the records not provided by BCI were Case Conversation Records documenting conversations between BCI and both the Clark County Prosecutor and the Ohio Attorney

General's Office. (*Id.*, at 3.) Non-party BCI argues that those Case Conversation Records not only are protected under the attorney-client privilege and the work product doctrine, but also fall outside of the scope of this Court's discovery order. (Doc. # 100, at 2.)

In support of his motion to compel BCI to comply with this Court's discovery order, petitioner argues that neither the attorney-client privilege nor the work product privilege apply to the Case Conversation Records at issue. Regarding the attorney-client privilege, petitioner argues that barring a showing that BCI contacted the Clark County Prosecutor's office in order to obtain legal advice, conversations between BCI and attorneys from that office are not protected by the attorney-client privilege. (Doc. # 86, at 3.) Similarly, petitioner argues that although *an* arm of the Ohio Attorney General's Office does represent BCI, that arm is *not* the Capital Crimes Unit, which unit's attorneys represent the Warden-Respondent in this action. This is evidenced, petitioner argues, not only by the fact that counsel for the Warden-Respondent did not represent BCI at the records deposition, but also by the fact that a structural chart available on the web site of the Ohio Attorney General's Office reflects that the Capital Crimes Unit and BCI are separate entities. (Doc. # 86, at 4.) Petitioner argues that, absent a showing of an attorney-client relationship between BCI and the Capital Crimes Unit of the Ohio Attorney General's Office, conversations between BCI and those assistant attorney generals are not protected by the attorney-client privilege. (*Id.*)

Asserting that the work product privilege generally protects from disclosure materials prepared by or for an attorney in anticipation of litigation, petitioner argues that the privilege does not protect the Case Conversation Notes at issue herein because they were not prepared by BCI *for* either the Clark County Prosecutor or the Ohio Attorney General's Office *in anticipation for*

2

*litigation*. (*Id.*, at 5.) Specifically, petitioner explains after he sought DNA testing during his state postconviction proceedings, the State offered to submit both the rape kit and beer bottle to BCI for testing. Subsequently, petitioner explains, the parties agreed by entry that BCI would conduct the testing. Thus, petitioner argues that because BCI was the laboratory selected by both the Clark County Prosecutor *and* petitioner to conduct DNA testing on the rape kit and beer bottle in connection with petitioner's state postconviction proceedings, the Case Conversation Notes that BCI generated in connection with that testing were not prepared *for* the Clark County Prosecutor's Office or the Ohio Attorney General's Office and were not prepared *in anticipation of litigation*. (*Id.*, at 5-6.) Petitioner further argues that his position is supported by Fed. R. Civ. P. 26(a)(2), which distinguishes between experts retained or employed to provide expert testimony in a case and "testifying witnesses retained by a party." (*Id.*, at 5.)

Non-party BCI disputes petitioner's arguments asserting the non-applicability of the attorney-client and work product privileges, and further alleges that the Case Conversation Records at issue fall outside of the scope of this Court's discovery order. Addressing petitioner's argument that the Capital Crimes Unit is not the arm of the Ohio Attorney General's Office assigned to represent BCI, non-party BCI asserts that O.R.C. § 109.02 and O.R.C. § 109.03 permit the Ohio Attorney General to assign attorneys from the Capital Crimes Unit to assist county prosecutors and State entities in any litigation involving capital crimes. (Doc. # 100, at 4.) "Since the Capital Crimes Section AAGs were actively working on this particular case, it is only logical that BCI employees would seek legal advice and direction from those AAGs." (*Id.*) Citing *State ex rel. Leslie v. Ohio Finance Agency*, 105 Ohio St. 3d 261 (2005), non-party BCI further asserts that attorney-client privilege applies not only when a government attorney rep-

3

resents a State agency before tribunals, but also when the attorney or in-house counsel dispenses legal advice regarding legal issues that arise in daily governmental operations. Non-party BCI contends that the Case Conversation Record generated by BCI in this instance contains recitations of legal advice by, and certain inquiries from, attorneys from the Capital Crimes Unit not only to assist the Clark County Prosecutor in connection with petitioner's state postconviction proceedings but also for use in the current federal habeas corpus proceedings. (*Id*.) Specifically, non-party BCI contends:

> BCI's Case Conversation Record documents dates, times, and substance of communications between BCI employees and the AGO Capital Crimes Section AAGs. It also contains recitations of the AAGs' legal advice and the AAGs' inquiries which were made in order to help them assist the Clark County Prosecutor in the State proceedings and to develop litigation strategies and legal opinions for use in subsequent federal proceedings.

(*Id*., at 4.)

Non-party BCI further asserts that the Case Conversation Record is protected by the work product privilege because it was created by BCI employees in preparation for litigation that was active at the time the record was created (petitioner's state postconviction proceedings), as well as for litigation that was anticipated in the future (petitioner's instant habeas corpus proceedings), and because it contains materials reflecting assistant attorney generals' development of case strategy, interpretations of court orders, and advice to BCI about legal compliance. (*Id*., at 5-6.) Specifically, non-party BCI asserts:

> During and prior to the litigation, the AGO Capital Crimes AAGs developed case strategy and interpreted court orders. The AAGs advised the BCI Scientists on legal compliance and strategical questions and directed their actions; consequently, the BCI Scientists were acting as the AAGs' agents when they assisted with litigation preparation. BCI's Case Conversation Record documents the AAGs' legal advice and instructions to BCI employees.

4

(*Id*., at 6.)  Non-party BCI contends that petitioner has not demonstrated a substantial need for the Case Conversation Record because it is not an item that is subject to re-testing or other scientific analysis.  (*Id*., at 6.)  Finally, non-party BCI asserts that above and beyond the fact that the Case Conversation Record is protected by the attorney-client and work product privileges, the Case Conversation Record at issue falls outside the scope of this Court's discovery order because a proper reading of the Court's order reveals that the discovery of BCI records relating to testing of the rape kit and beer bottle was "cautiously" granted in relation to raw data, testing methods, and other information related to the laboratory work.  (*Id*., at 7.)

The attorney-client privilege protects from disclosure confidential communications between a client and legal adviser.  In federal cases, federal common law defines the parameters of the privilege.  *In re Lott*, 424 F.3d 446, 450 (6th Cir. 2005) (applying federal common law definition of attorney-client privilege in habeas corpus case); *see also Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998) ("Questions of privilege are to be determined by federal common law in federal cases.').

> The elements of the attorney-client privilege are as follows: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed*, 134 F.3d at 355-56 (citations omitted).  The person or entity asserting the privilege bears the burden of proof of establishing the existence of an attorney-client relationship.  *See, e.g., Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland*, 131 F.R.D. 596, 599 (M.D. Fla. 1990); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 3 (D.C. Ill. 1980).

The work product doctrine "is distinct from and broader than the attorney-client privi-

5

lege." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (quoting *United States v. Nobles*, 422 F.2d 225, 238 n.11 (1975)). The purpose of the doctrine is to allow an attorney "to assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and to protect [his] clients' interests." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). The doctrine originated with the decision of *Hickman v. Taylor, supra*, but is now codified in Fed. R. Civ. P. 26(b)(3) and (4). *Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 338-39 (6th Cir. 1988).

Following the parameters set forth in Fed. R. Civ. P. 26(b)(3) and (4), the Sixth Circuit has identified a five-step approach for determining whether the work product doctrine applies. First, the party requesting discovery must demonstrate that the materials sought are relevant. *Toledo Edison*, 847 F.2d at 339. Second, "[i]f the party requesting discovery meets this burden and the court finds that the claimed material is relevant and not privileged, the burden shifts to the objecting party to show that the material was 'prepared in anticipation of litigation or was for trial' by or for that party or that party's representative...." *Id*., (quoting Fed. R. Civ. P. 26(b)(3)). Third, if the objecting party meets its burden and the court concludes that the material was prepared in anticipation of litigation as set forth above, then the burden shifts back to the party seeking discovery to demonstrate both a substantial need for the materials and that the party seeking discovery is unable without undue hardship to obtain the materials by other means. *Id*., at 339-340. Fourth, after application of the shifting burdens and even if the court concludes that the requesting party has demonstrated a substantial need and inability without undue hardship to obtain the materials by other means, the burden shifts again to the objecting party to demonstrate

6

that the materials constitute mental impressions, conclusions, opinions, or legal theories, discovery of which Fed. R. Civ. P. 26(b)(3) flatly prohibits. *Id*., at 340.  Fifth, specifically regarding experts as set forth in Fed. R. Civ. P. 26(b)(4), "if it is contended that the material requested is developed by an expert (1) who has been retained or specially employed in anticipation of litigation or for trial (on this issue the objector has the burden), and (2) who is not expected to be called as a witness, then before discovery can be ordered, it is essential that the court find the exceptional circumstances described in Rule 26(b)(4)(B)," *Id*., at 341, *i.e.*, that it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

>The Federal Rules of Civil Procedure provide:
>
>When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed. R. Civ. P. 26(b)(5)(A).  In the instant case, non-party BCI states that the Case Conversation Records at issue are protected by the attorney-client privilege because:

>BCI's Case Conversation Record documents dates, times, and substance of communications between BCI employees and the AGO Capital Crimes Section AAGs. It also contains recitations of the AAGs' legal advice and the AAGs' inquiries which were made in order to help them assist the Clark County Prosecutor in the State proceedings and to develop litigation strategies and legal opinions for use in subsequent federal proceedings.

(Doc. # 100, at 4.)  Non-party BCI further states that the Case Conversation Records are protected by the work product doctrine because:

>During and prior to the litigation, the AGO Capital Crimes AAGs developed case strategy and interpreted court orders.  The AAGs advised the BCI Scientists on legal compliance and strategical questions and directed their actions; consequent-

> ly, the BCI Scientists were acting as the AAGs' agents when they assisted with litigation preparation. BCI's Case Conversation Record documents the AAGs' legal advice and instructions to BCI employees.

(Doc. # 100, at 6.) These explanations are insufficient to enable this Court to determine whether the attorney-client privilege and/or work product doctrine apply, in large part because the nature of BCI's role in this matter has not sufficiently been defined or explained.

Non-party BCI contends that, in all matters and at all times relating to the testing of the rape kit and beer bottle, it was a client of and agent for attorneys from the capital crimes section of the Ohio Attorney General's Office. Counsel for petitioner contend that BCI was never a client of the Clark County Prosecutor's Office or attorneys from the Ohio Attorney General's capital crimes section, and that BCI was neither an agent for the State, nor an expert specifically retained by the State, when it performed the testing. The assertions by petitioner and non-party BCI are insufficient to enable this Court to determine what BCI's role was and, consequently, whether the attorney-client privilege and/or work product doctrine apply.

That being so, non-party BCI and counsel for the Warden-Respondent are **DIRECTED** to **FILE**, within twenty (20) days of the date of this order, a privilege log and accompanying affidavit describing the nature of the communications set forth in the Case Conversation Record without revealing the information that may be privileged or subject to protection but with enough specificity to enable this Court to determine whether the attorney-client privilege and/or work product doctrine apply.

The privilege log should separately identify each document, letter, memo, email, notes of conversations, and the like withheld from production and identify it with sufficient particularity to permit petitioner's counsel to assess the claim of privilege. For example, an email might be

identified in the privilege log by date, identity of sender, role of sender (attorney, BCI technician, etc.), identity of recipients, role of recipients, and subject matter (*e.g.,* request for legal advice). The affidavit(s) should set out facts establishing each factual predicate of a claim of attorney-client privilege or work product protection. The affidavit(s) should also include facts about the nature of the role that BCI played in the testing of the rape kit and beer bottle, as well as the relationship between BCI employees and any and all attorneys present during meetings that were documented in the Case Conversation Records relating to the testing of those pieces of evidence.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge. The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/Mark R. Abel
United States Magistrate Judge