# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

TIMOTHY L. COLEMAN,

                                   :

        Petitioner,                            Case No. 3:03-cv-299

                                  :        District Judge Edmund A. Sargus, Jr.
    -vs-                                   Magistrate Judge Michael R. Merz

MARGARET BRADSHAW, Warden,

                                   :

        Respondent.

---

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

This capital habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 201) to the Magistrate Judge's Report and Recommendations (the "Report," Doc. No. 198). The Warden has filed a Response to the Objections (Doc. No. 204) and Judge Sargus has recommitted the matter to the Magistrate Judge for reconsideration in light of the Objections (Doc. No. 202).

### Introductory Objections re *Cullen v. Pinholster*

Discovery in this case predated *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011), where the Supreme Court held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record," and that evidence acquired through use of an evidentiary hearing may not be considered. *Id.* at 1399. After *Pinholster* was decided, the Magistrate Judge denied Petitioner's Motion for Evidentiary

1

Hearing on the grounds such a hearing was precluded by *Pinholster* at least until and unless the Court decided under 28 U.S.C. § 2254(d)(1) that the Ohio courts' decisions in this case were objectively unreasonable applications of clearly established Supreme Court precedent (Decision and Order, Doc. No. 197).  That Decision was filed July 1, 2011, and Petitioner did not file any objections, thereby forfeiting any he may have had.

Petitioner now proffers three objections to the exclusion of evidence under *Pinholster*. First he says that, unlike Pinholster, he was diligent in attempting to present evidence in the state courts (Objections, Doc. No. 201, PageID 2425).  Second, he claims he has now satisfied § 2254(d)(1) on the basis of the state court record alone.  Third, he asserts he has now shown "by clear and convincing evidence . . . that subsidiary state-court factual findings are clearly erroneous."  *Id.* at PageID 2426.

For reasons given below as to each of the relevant Grounds for Relief, the Magistrate Judge has concluded that Coleman has not met either the 2254(d)(1) or the 2254(d)(2) standard. Coleman's second and third objections, premised on a hypothetical contrary finding, need not be discussed further.

Coleman's first objection is that *Pinholster* is inapplicable because, unlike Pinholster, he was diligent in attempting to gather and present evidence in the state courts.  That objection is untimely as it was fully available to Coleman when the Magistrate Judge decided to the contrary in July, 2011, and Coleman failed to file any objection.

**First Ground for Relief:  Actual Innocence**

In his First Ground for Relief, Coleman asserts he is actually innocent of the murder of

Melinda Stevens and that it would therefore be unconstitutional to execute him for that crime. The Report notes that the constitutional right not to be executed for a crime one has not committed – a so-called free standing claim of actual innocence -- has not yet been clearly established by the United States Supreme Court (Doc. No. 198, 2301-2302). However, the Second District Court of Appeals assumed there was such a right and decided the claim on the merits in Coleman's second post-conviction relief appeal. The Report recommended denying this Ground for Relief on the basis that the court of appeals' decision was not an objectively unreasonable application of United States Supreme Court precedent relevant to the issue, particularly *Herrera v Collins,* 506 U.S. 390, 417 (1993); *House v. Bell,* 547 U.S. 518 (2006); and *Schlup v. Delo,* 513 U.S. 298 (1995)(Report, Doc. No. 198, PageID 2306).

The principal foundation for Coleman's claim of actual innocence is an affidavit of William Sapp, another Ohio death-row inmate who claims that he killed Melinda Stevens. The trial court judge rejected the affidavit without a hearing, concluding that it lacked "any credibility." After analysis, the court of appeals reached the same conclusion: "when viewed in the context of the overwhelming evidence of Defendant's guilt, Sapp's declaration that he is responsible for killing Stevens is so improbable as to constitute no credible evidence." *State v. Coleman,* 2005 Ohio 3874, 2005 Ohio App. LEXIS 3583 ¶ 32 (2nd Dist. 2005).

In his Objections, Coleman asserts that the state courts' rejection of the Sapp Affidavit is "an unreasonable determination of the facts in light of the record before the state court." (Doc. No. 201, PageID 2440). Coleman notes that the trial judge in this case never heard live testimony from Sapp and argues this mean the trial judge's own finding "lacked credibility." *Id.* at 2441-2442.

Lack of observation of the demeanor of a witness does not make findings about his or her

3

credibility "incredible."  Great deference is due to state court credibility determinations.  *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011), *cert. denied,* ___ U.S. ___, 132 S.Ct. 1760 (2012), citing *Felkner v. Jackson*, ___ U.S. ___, ___,131 S. Ct. 1305, 1307 (2011) "For a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."  *Otte v. Houk*, 654 F.3d 594 (6th Cir. 2011), *quoting Larry v. Branker*, 552 F.3d 356, 370 (4th Cir. 2009).

Coleman lists the factors relied on by the state courts for finding Sapp's affidavit to be incredible.  These include that he had nothing to lose because he himself was already sentenced to death for other murders, the suspicious timing of the affidavit, psychological testimony that Sapp is a chronic liar, and the overwhelming other evidence of Coleman's guilt.  *State v. Coleman,* 2005 Ohio 3874, 2005 Ohio App. LEXIS 3583 ¶¶ 29- 32 (2nd Dist. 2005).  Coleman spends five pages arguing why these reasons are not conclusive. But the fact that any one of these reasons, or all of them together, were not conclusive on the question of Sapp's credibility does not show it was unreasonable to rely on them.  They are not irrational bases on which to rely for a credibility determination.  Coleman offers no reason to suggest Sapp would have been more believable in person than by affidavit.

The most critical point in the Report on Sapp's credibility is that he recanted his affidavit.  Assuming the Supreme Court would recognize a free-standing actual innocence claim, a petitioner cannot succeed on that claim "unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329.  A recanted affidavit by a convicted murderer does not meet that standard and the Ohio courts did not unreasonably apply *Schlup* in finding that Sapp's Affidavit is insufficient proof.

4

**Second Ground for Relief:  *Brady v. Maryland***

In his Second Ground for Relief, Coleman asserts that the State withheld information to which he was entitled under *Brady v. Maryland*, 373 U.S. 83 (1963), to wit, information "identifying William Sapp as the perpetrator of the crime for which Petitioner was convicted and sentenced to death." (Petition, Doc. No. 9, PageID 10.)  Specifically, Coleman references a letter written by Sapp to one of his victims, Uma Gail Timmons, in which he confesses to murdering someone "off of Pleasant" and an alleged oral confession of Stevens' murder to Springfield law enforcement. *Id.* at PageID 10-11.  The oral confession allegedly occurred April 2 or 3, 1997, and the letter is dated July, 1998, both well after Coleman's conviction and sentence on February 21, 1997.

This claim was raised in Coleman's second application for post-conviction relief and rejected on the grounds that the oral confession did not happen and the only link between what was in the letter to Timmons and the Stevens' murder was Coleman's allegation that Stevens was the victim referenced in the letter (Decision and Judgment Entry, Return of Writ, Doc. No. 167, Apx. Vol 15 (amended) as quoted in Report at 2312-2313).  The court of appeals affirmed the conclusion that there was no *Brady* violation by repeating its finding that the Sapp affidavit is incredible and agreeing that the reference in the Timmons' letter is vague and indefinite.  *State v. Coleman,* 2005 Ohio 3874, 2005 Ohio App. LEXIS 3583 ¶¶ 34-36 (2nd Dist. 2005).  The Report recommended granting AEDPA deference to these state court findings and dismissing the Second Ground with Prejudice (Doc. No. 198, PageID 2319).

Sapp's purported confession to Springfield police occurred in April, 1997, after Coleman

was convicted at trial in February, 1997. The Una Timmons letter is undated, but the record contains evidence by way of a newspaper article that its contents were known to the Clark County Prosecutor as of July 14, 1998. Coleman objects that "[t]he *Brady* duty is ongoing and continues even after the trial." (Objections, Doc. No. 201, PageID 2448, *citing Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997), which in turn cites *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987). Coleman asserts that his "investigation, had he received the letter, would have led him to all of the following additional evidence . . ." (Objections, Doc. No. 201, PageID 2449). But the letter did not come into existence or into the prosecutor's hands until seventeen months **after** trial. Coleman's defense attorneys could not have done any pre-trial investigation on the basis of the contents of the Timmons letter when it did not even exist at the time of trial, so far as the record shows. Conversely, Coleman's counsel had the letter by the time it was material to his case, to wit, at the time of litigation of his second post-conviction petition. In his Objections, Coleman points to no evidence in the record that the State had the Timmons letter before Coleman's trial.

Coleman's first specific objection is that the appellate court applied the wrong materiality standard (Objections, Doc. No. 201, PageID 2452). But the question of materiality arises only after a court decides that the item in question is *Brady* material at all, i.e., that it is exculpatory. The appellate court decided that this letter was not exculpatory because the reference to who was killed (someone off Pleasant Street) was vague and indefinite. Coleman asserts the proper standard is whether "disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable." (Objections, Doc. No. 201, PageID 2452, citing Third Circuit precedent.) That is the correct standard. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 683 (1985). But the question is, which outcome? The letter could not have been disclosed before trial because it did not exist at that time. The letter was already in Coleman's possession at the time of the proceeding that counts, the successive post-conviction relief proceeding. As to the letter, the Common Pleas Court found:

> Following his conviction and sentence [in September 1996], Sapp wrote to Timmons and made many disturbing threats to her physical harm. In the same letter, Sapp also directed a number of threats against the Clark County prosecutor, evidently for his role in securing a conviction of Sapp for the crimes against Timmons.
>
> Coleman has also submitted a news story about the Timmons letter, published just after Timmons notified the authorities she had received it. The date of this news article is July 14, 1998, which was the time when Sapp was awaiting trial in his death penalty case before Judge O'Neill. While the letter the Timmons does not bear a date, it stands to reason that the letter was written just before the news article was published. Thus, the Timmons letter was written more than a year after Coleman's conviction and death sentence, and more than 2 ½ years before the filing of his successor postconviction petition.
>
> Coleman does not explain either how or when he became aware of the Timmons letter and the news article about it. Moreover it is evident that Coleman secured a copy of the Timmons letter from a source other than the Clark County prosecutor. This circumstance is itself noteworthy, where a copy of the Timmons letter was presumably secured by either the newspaper or, more likely, Sapp's defense team. Either way, Coleman had his own copy of the Timmons letter, however and whenever he came to possess it. Consequently, Coleman's real contention is not that the prosecutor's office concealed the Timmons letter, but rather that the prosecutor's office should have delivered a copy to him, before he secured a copy by his own devices.

(Decision and Entry of July 21, 2004, copy at Return of Writ, Appx Vol. 15 (amended) pages 173-174.) In sum, even assuming the Timmons letter is exculpatory, it was only material to the

successor post-conviction proceeding and Coleman had his own copy of the letter for that proceeding.

Coleman's second specific objection raises the same claims he made in the First Ground for Relief about why the Sapp Affidavit is not incredible. No further analysis is needed on that point. On the premise that he has shown the state court decision was unreasonable under 28 U.S.C. § 2254(d), Coleman discusses evidence in the expanded record (Objections, Doc. No. 201, PageID 2456-2458). Because the premise is unsound, the evidence in the expanded record remains excluded under *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011).


**Third Ground for Relief:  Ineffective Assistance of Counsel at the Guilt Phase**


In his Third Ground for Relief, Coleman alleges he received ineffective assistance of trial counsel during the guilt phase of his trial. The Report deals with this claim in detail over thirty-seven pages (Doc. No. 198, PageID 2319-2356). Having reviewed the Objections on this Ground for Relief (Doc. No. 201, PageID 2462-2488), the Magistrate Judge again concludes the state court decisions on this claim are not objectively unreasonable applications of *Strickland v. Washington* and its progeny. Prior the Stevens' murder, Coleman told a number of people of his plans to kill her to eliminate her as a witness in his drug trial. After he killed her, he told many more people that he had done so. Witnesses to these statements, like the victim, Coleman, and Sapp, came from Springfield's drug culture, but Coleman has failed to show that tougher impeachment of the witnesses would have overcome the overwhelming proof of his guilt which came from his own mouth. No further analysis is warranted on the Third Ground for Relief.

8

**Fourth Ground for Relief:  Ineffective Assistance of Counsel at the Penalty Phase**

In his Fourth Ground for Relief, Coleman asserts he received ineffective assistance of trial counsel at the penalty phase of his trial.

Coleman raised portions of this claim on direct appeal to the Ohio Supreme Court.  As to counsels' failure to object to admission in the penalty phase of guilt phase evidence, the court noted that almost all of that evidence would have been admissible under the capital sentencing statute.  *State v. Coleman*, 85 Ohio St. 3d 129, 137-39 (1999).  It found Coleman's claim that additional mitigating evidence could have been found was completely speculative.  *Id.*.

Coleman offered additional documentary support of this claim in post-conviction.  He asserted Dana Strodes, Athea Martin, and Susan Smith, each of whom had a child by Coleman, would have testified he was good to his children and never violent towards the women.  The state offered a counter affidavit from Detective Flores that Dana Strodes had told him that Coleman shot her.  The court of appeals noted that it was reasonable strategy not to "diminish the poignant testimony of Coleman's father with testimony of the women Coleman had impregnated but never married."  Coleman claimed in post-conviction his mother should have been called, but the record, quoted by the court of appeals, establishes she was too upset to testify.  Coleman's sister Sonja was not called, but the Ohio courts found her proffered testimony in post-conviction would have been cumulative of Coleman's father's testimony.

Coleman claimed further in post-conviction that the opinion of examining psychologist Earhard Eimer should have been presented.  Dr. Eimer had examined Coleman pre-trial at defense counsels' instance.  The Ohio courts concluded his testimony was not so favorable to Coleman as to make failure to present it unreasonable.  Trial counsel also failed to present the

testimony of transporting deputy sheriff Williams that Coleman had not misbehaved during transport on the six days of the trial. While this would have been admissible evidence under *Skipper v. South Carolina,* 476 U.S. 1 (1986), six days of good behavior while on trial for one's life is hardly very persuasive mitigation evidence.

Coleman also claimed in post-conviction that a "cultural expert" should have been presented to show why a person from a stable family would turn to drug dealing, The trial court found this would not have persuasively mitigated the execution-style murder of a witness who was the mother of five children. Coleman had evidence he had worked for three months before the shooting which the Ohio courts also found was not likely to have been persuasive. The Ohio courts also rejected a "cumulative ineffective assistance of trial counsel" claim because no individual claim of ineffective assistance of trial counsel had been found persuasive.

The Report concluded that trial counsel had fallen below professional standards in waiting too long to begin investigation and in the lack of thoroughness of that investigation (Doc. No. 198, PageID 2372). However, the Report concluded that the Ohio courts had applied the correct legal standards under *Strickland* and that their finding of lack of prejudice was entitled to deference. For example, the claim about what a cultural expert would have offered was purely speculative. The employment records were only for three months, showed mediocre reviews, and reflected absenteeism and tardiness. There were certainly negative aspects to Dr. Eimer's report which would have come out had he testified.

In the Objections, counsel largely re-argue the mitigation evidence and substantially overstate it. For example, they assert "[h]had counsel conducted a reasonable investigation and presentation, the jury would have learned that Coleman was a responsible father, loving, caring, generous, and non-violent." (Doc. No. 201, PageID 2491, repeated verbatim at PageID 2519).

10

Ordinary jurors are not likely to find responsible fatherhood in a 27-year old man who has five children by three different women, none of whom he has married.  As to "non-violent," the jury had already found Coleman had committed an execution-style murder of a mother of five and, if Dana Strode had testified, would also have learned he shot her.  While the jury may have heard witnesses say words like "responsible father" or "non-violent,"  they would not likely have "learned" in the sense of believing that that was Coleman's character.

Coleman objects that "[n]o state court properly considered, in assessing prejudice under *Strickland*, the cumulative effect of all of trial counsel's errors and omissions and all of the omitted evidence."  (Objections, Doc. No. 201, PageID 2502.)  Counsel are correct that prejudice must be weighed cumulatively, but the Magistrate Judge is not persuaded the Ohio courts failed to do that.  Those courts discussed at length each of the varieties of evidence that Coleman claims should have been presented, but nothing demonstrates they considered them in isolation.

The Magistrate Judge again respectfully recommends that the Fourth Ground for Relief be dismissed because the state court's decision of these claims is not an objectively unreasonable application of *Strickland*.  However, because there are many varied opinions among reasonable jurists about the investigation and presentation of mitigation evidence in capital cases, a certificate of appealability should be issued on this claim.

### Fifth Ground for Relief:  *Batson* Claim

In his fifth Ground for Relief, Coleman claims his constitutional rights were violated when the State used a peremptory challenge to exclude prospective juror Blackmon.  This claim was raised on direct appeal and rejected by the Ohio Supreme Court on the merits.  *State v.*

*Coleman*, 85 Ohio St. 3d 129, 142-43 (1999).  In the Report, the Magistrate Judge recited the governing law on *Batson* claims (Doc. No. 198, PageID 2383-84).  The Report then quotes at length the record as to the exercise of this peremptory challenge and concludes the Ohio Supreme Court's decision was entitled to AEDPA deference.  It was recognized at trial that Mrs. Blackmon was African-American.  The prosecutor stated a completely race-neutral reason for excusing her:  she had a son in prison for drug trafficking who had been prosecuted in Clark County.  The response of defense counsel to this statement was mere ipse dixit:  "We believe the reason the prosecutor is – is exercising the preempt [sic] on Mrs. Blackmon is quite simply because she's a black woman."   (Quoted at Report, Doc. No. 198, PageID 2387.)   The explanation is race neutral and Judge Lorig made a finding that the asserted reason was not pretextual.  On that basis, the Ohio Supreme Court's decision on this claim was neither contrary to nor an unreasonable application of Batson, *Purkett v. Elem,* 514 U.S. 765 (1995), or *Hernandez v. New York*, 500 U.S. 352 (1991).

Coleman argues "[t]he record of Ms. Blackmon's impartiality is clear." (Objections, Doc. No. 201.)  What is clear from the record is that she stated she could be fair and put aside any bias from the fact that this Prosecutor's Office had put her son in prison for drug dealing which she claimed did not happen.  The prosecutor could not have exercised a challenge for cause based on her statements, but Coleman does not deny the existence of the underlying race-neutral facts and the prosecutor was not required to take Ms. Blackmon's statement that she could disregard them at face value.

**Ground Six:  Admission of Inaudible Tape Recordings**

In his Sixth Ground for Relief, Coleman claims his due process rights were violated by the trial court's admission into evidence of audiotapes which were so inaudible "as to create a danger of unfair prejudice substantially outweighing any probative value. . ."  (Petition, Doc. No. 9, PageID 27.)

The Report noted that Judge Sargus had dismissed this claim as procedurally defaulted (Doc. No. 198, PageID 2390).  Coleman agrees this is an accurate statement of the status of this claim, but objects to the Magistrate Judge's recommendation that no certificate of appealability issue on this claim, citing his argument against the Motion to Dismiss (Objections, Doc. No. 201, PageID 2529, referencing Doc. No. 19 at 12).

Coleman's entire argument against procedural default in 2005 was:

> Counsel made no contemporaneous objection to these tape recordings. (See Motion at p. 12). Counsel did object, however, to the tape recordings' relevance. (See Jury Trial Vol. 5, p. 1150). Counsel also noted the intelligible nature of the tapes during trial. (See Jury Trial Vol. 4, p. 814). And, Coleman can excuse this procedural bar by establishing "cause and prejudice" based on the ineffective assistance of trial counsel. (See Joint Apx. Vol. 4, p. 103[1]).

(Response to Motion to Dismiss, Doc. No. 19, PageID 270.)

Judge Sargus found this claim procedurally defaulted on the following extensive analysis:

> The first part of the *Maupin* test requires the Court to determine whether a procedural rule was applicable to petitioner's claim and, if so, whether he violated it. Under Ohio's contemporaneous objection rule, the failure to object contemporaneously to admissibility of evidence waives all but plain error on appeal. *State*

---

[1] No argument about ineffective assistance of trial counsel appears at Apx. Vol. 4, p. 103.

*v. Jones,* 91 Ohio St. 3d 335, 343 (2001); *State v. Self,* 56 Ohio St. 3d 73, 81 (1990); *State v. Carrion,* 84 Ohio App. 3d 27, 29-30 (Ohio App. 9 Dist. 1992). To satisfy the contemporaneous objection rule, an objection must be not only specific, Crim. R. 30(A); *State v. Lane,* 49 Ohio St. 2d 77, 84 (1976), vacated on other grounds, 438 U.S. 911 (1978), but also contemporaneous so as to give the trial court an opportunity to correct any error in a timely fashion and before any prejudice ensues. *See State v. Williams*, 51 Ohio St. 2d 112, paragraph one of the syllabus (1977), vacated in part on other grounds, 438 U.S. 911 (1978). Plain error review, in turn, is to be exercised with "utmost caution," and invoked only to prevent a clear miscarriage of justice. *State v. Underwood,* 3 Ohio St. 3d 12, 14 (1983). An alleged error "does not constitute plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St. 2d 91, paragraph two of the syllabus (1978).

In the instant case, review of the record confirms petitioner's concession that defense counsel neglected to object to the admission of the drug buy tapes on the ground that they were inaudible, but belies petitioner's assertion that counsel did object to the admission of State's exhibit R on the ground that it was inaudible. At the conclusion of the prosecution's case, when the State's exhibits were formally admitted into evidence, trial counsel objected "for the record" to the admission of State's exhibit R, failing to state any specific grounds for the objection. (Tr. Vol. 6, at 1162). Earlier, when State's exhibit R was introduced and played in open court, trial counsel did not object on any grounds. (Tr. Vol. 6, at 969). Thus, trial counsel's objection to the admission of State's exhibit R was neither specific nor contemporaneous. That being so, the objection was insufficient to comply with Ohio's contemporaneous objection rule. The Court concludes, therefore, that petitioner violated Ohio's contemporaneous objection rule as to the drug buy tapes and State's exhibit R, and that the first part of the *Maupin* test has been satisfied.

Under the second part of the *Maupin* test, violation of a state procedural rule will not preclude habeas corpus review unless the state courts actually enforced the procedural rule. *Harris v. Reed,* 489 U.S. 255, 261-62 (1989). In order to determine whether the state courts clearly and expressly relied on a state procedural default, this Court must look to the last state court disposition providing reasons for its decision. *See McBee v. Abramajtys*, 929 F.2d 264,267 (6th Cir. 1991). In *McBee*, it appears that the state appeals court expressly applied the procedural default rule, and

proceeded to only a limited review of the merits in order to determine whether the fundamental miscarriage of justice exception was applicable. *Id.* at 266. The Sixth Circuit enforced the state court procedural default, holding that the state courts had clearly and expressly relied upon two alternative grounds, procedural default or substantive lack of merit, in rejecting the petitioner's federal claim. *Id.* at 267.

In the instant case, the last state court to address petitioner's argument that the tapes were admitted in violation of his due process rights was the Supreme Court of Ohio on direct appeal. The Supreme Court of Ohio resolved petitioner's allegations as follows:

> In his fifth proposition of law, appellant argues that the trial court abused its discretion in admitting four tape recordings into evidence because the tapes were partly inaudible. Three of these tape recordings were of the separate drug transactions in which appellant sold crack cocaine to Stevens. The fourth tape recording was of appellant's statement to police the day after the murder. However, Coleman failed to object at trial on this ground and thus waived all but plain error. *State v. Campbell* (1994), 69 Ohio St.3d 38, 630 N.E.2d 339. Plain error is error of such magnitude that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus.

> To be admissible, a tape recording must be '"authentic, accurate and trustworthy." *State v. Rogan* (1994), 94 Ohio App.3d 140, 148, 640 N.E.2d 535, 540. Whether to admit "tape recordings containing inaudible portions is a matter within the sound discretion of the trial court." *State v. Gotsis* (1984), 13 Ohio App.3d 282, 283, 13 OBR 346,347-348,469 N.E.2d 548, 551, *citing United States v. Williams* (C.A. 8, 1977), 548 F.2d 228.

> In this case, uncontested testimony by police officers present at the transactions established the accuracy, authenticity, and trustworthiness of the tapes. The three tapes of Coleman's drug transactions with Stevens are filled with background noises, muffled sounds, and muttered conversations, which make the tapes impossible to understand at times except for scattered phrases. However, recorded tapes of actual events, such as street drug sales, should be admissible despite audibility problems, background noises, or the lack of crystal clear

conversations, since they directly portray what happened. See, e.g., *State v. Rodriguez* (1990), 66 Ohio App.3d 456,457, 325 N.E.2d 267,269.

Given their authenticity, the trial court did not abuse its discretion in admitting the street tapes despite audibility problems. Officers at the scene who directly heard the radio transmissions testified at trial in order to make the recordings more understandable. Coleman had ample opportunity to cross-examine these officers, "thereby clarifying any problems caused by poor quality,*** as well as the opportunity to offer his version of the inaudible portions[.]" *Rogan*, 94 Ohio App.3d at 149, 640 N.E.2d at 541. An authenticated tape is "much more likely to be free from error than the words of a witness testifying from memory." *State v. James* (1974), 41 Ohio App.2d 248, 250, 70 0.0.2d 456, 457, 325 N.E.2d 267, 269.

In contrast, the fourth tape, Coleman's taped interview with the police, was understandable despite low voices, pauses, and inaudible phrases at times, and was authenticated by the detective who took Coleman's statement on January 3. Defendant cross-examined the detective regarding the contents of the taped statement. Appellant cannot demonstrate that the tapes are not accurate, authentic, or trustworthy. Tape recordings are the best evidence of their content, not transcripts prepared from them. *Rogan*, 94 Ohio App.3d at 148, 640 N.E.2d at 540. Moreover, Coleman's exculpatory conversation with police in which he denied killing Stevens directly supported Coleman's trial strategy without the need for his testimony. Coleman can demonstrate neither prejudice nor plain error, therefore, his fifth proposition of law is overruled.

*Coleman, supra*, 85 Ohio St. 3d at 141-42. Since the Ohio Supreme Court clearly and expressly relied on a state procedural default in rejecting petitioner's claim, the second part of the *Maupin* test has been met. Petitioner does not argue otherwise.

The Court further finds that the procedural rule is adequate and independent under the third part of the *Maupin* test. Ohio's contemporaneous objection rule is clearly stated and regularly enforced. See, e.g., *State v. Underwood*, 3 Ohio St. 3d 12, syllabus (1983)("The failure to object to a jury instruction constitutes a waiver of any claim of error thereto .... "); *State v. Durhin*,, 66 Ohio St. 2d 158, 161 (1981)(failure to object to jury instruction

16

improperly allocating burden of proof is waiver). Ohio's contemporaneous objection rule serves important state interests in judicial economy and minimizing reversible error by enabling a trial judge to deliver jury instructions that are free of error, and, where possible, agreeable to the parties. Finally, Ohio's contemporaneous objection rule-- even with the application of plain error review-- does not rely on or otherwise implicate federal law. The Sixth Circuit has consistently ruled that Ohio's contemporaneous objection rule is an adequate and independent procedural rule that bars federal habeas corpus review absent a demonstration of cause for the waiver and resulting prejudice. See *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854, 866-71 (6th Cir. 2000*); see also Osborne v. Ohio*, 495 U.S. 103, 123 (1990); *Engle v. Isaac*, 456 U.S. 107, 124-25 (1982).

Once the Court determines that a constitutional claim is subject to procedural default, the Court may not address the merits of that claim, absent a showing by petitioner that the default can be excused under either the cause-and-prejudice test or the narrow fundamental miscarriage of justice exception. The Supreme Court has refrained from establishing firm contours for the cause-and-prejudice standard that the Court adopted for excusing the default of constitutional claims during state court proceedings. *Amadeo v. Zant*, 486 U.S. 214, 221-22 (1988). As a general rule, though, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner offers ineffective assistance of trial counsel as cause, due to trial counsel's failure to object to the prosecutor's remarks. In order to qualify as cause for a procedural default, counsel ineffectiveness must rise to the level of an independent constitutional violation under the standard established in *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *** So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra,* we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986).

17

Thus, to establish a claim of ineffective assistance of counsel sufficient to establish cause for the default of this claim for relief, petitioner must show both deficient performance on the part of his appellate attorneys and prejudice from the deficient performance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong of the *Strickland* test, the Court notes that, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish the second prong of the *Strickland* test, i.e., prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

It bears reminding, in conducting a cause and prejudice analysis, that in *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000), the Supreme Court held that an ineffective assistance of counsel claim offered as cause for the default of another federal claim could itself be procedurally defaulted. See also *Coleman v. Mitchell, supra,* 268 F.3d 417, 432 (6th Cir. 2001). That means, among other things, that, before a district court may consider a claim offered as "cause" to excuse the procedural default of another federal claim, the district court must first determine whether that "cause" argument was properly presented to the state courts. Only if it was properly presented may this Court consider it as "cause" to excuse the default of another constitutional claim. In the instant case, it does not appear that petitioner ever presented to the state courts a claim of ineffective assistance of counsel stemming from counsel's failure to object to the admission of the four inaudible tapes. That being so, this Court is precluded from considering trial counsel ineffectiveness as "cause" to excuse the default of petitioner's sixth ground for relief.

In any event, the Court is not persuaded that counsel performed deficiently or to petitioner's prejudice in failing to object to the admission of the four tapes. At best, the omission was a strategic decision on the part of trial counsel because in some instances, as with petitioner's taped statement to the police, the tapes exculpated petitioner, and in other instances, as with the taped transactions of drug buys between petitioner and Stevens, the tapes were too sketchy to offer anything in the way of support for the state's case. At worst, the omission was an excusable oversight on counsel's part that did not fall below the minimum standard of objectively reasonable representation. Moreover, it simply cannot be said that the outcome of petitioner's trial probably would have been otherwise, had defense counsel objected to the admission of the tapes. For one thing, as the Ohio Supreme Court pointed out in its plain error review, the weight of authority militated in favor of admitting the tapes. *Coleman, supra* 85 Ohio St. 3d at 141-42, citing *State v. Rodriguez,* 66 Ohio App. 3d 5 (1990); *State v. Rogan,* 94 Ohio App. 3d 140 (1994); *State v. James,* 41 Ohio App. 2d 248 (1974). Moreover, as to the admission of the tapes purporting to depict drug buys by Stevens from petitioner, plenty of other evidence of those drug buys was presented during trial. Finally, as to State's Exhibit R, the fact remains that large portions of the tape were audible, thereby making it highly unlikely that the trial court would have sustained any objection to admissibility of the statement on the ground that the tape was too inaudible. Thus, the Court cannot find either that counsel performed deficiently or that petitioner was prejudiced.

For the foregoing reasons, the Court concludes that petitioner's sixth ground for relief is procedurally defaulted and that petitioner cannot establish cause and prejudice sufficient to excuse that default. Thus, respondent's motion to dismiss petitioner's sixth ground for relief as procedurally defaulted will be granted.

(Opinion and Order, Doc. No. 32, PageID 462-467.)

To be qualified for a certificate of appealability on Ground Six, Petitioner must show that Judge Sargus' opinion, just quoted, is debatable among reasonable jurists. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To meet that requirement, Coleman merely incorporates the one-paragraph argument he made in response to the Motion to Dismiss and claims "reasonable jurists could disagree with the Court's procedural default determination and could find that this claim is

adequate to proceed further."  (Objections, Doc. No. 201, PageID 2529).

Incantation of the standard is not an argument that the standard is met.  In the eight years since Judge Sargus decided the Motion to Dismiss, the law on which he relied has been repeatedly affirmed.  For example, the Sixth Circuit has repeatedly held since then, in a number of capital cases, that Ohio's contemporaneous objection rule is an adequate and independent state ground of decision.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012)(citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005);  *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

The Magistrate Judge again respectfully recommends that a certificate of appealability be denied on Ground Six.

**Ground Seven:  Introducing Evidence from the Drug Case**

In his Seventh Ground for Relief, Coleman argues he was denied due process when evidence from his drug trafficking trial at which Melinda Stevens would have been the principal witness against him was introduced at his trial for murdering Melinda Stevens to prevent her from testifying.

The Report recommended this Ground for Relief be dismissed because the Ohio Supreme Court decision that this evidence was relevant to motive was neither contrary to nor an

unreasonable application of any relevant United States Supreme Court precedent.

Coleman first objects that there should be no AEDPA fact deference in this case under 28 U.S.C. § 2254(d)(2) because "[t]he Ohio Supreme Court's findings that all of the evidence was necessary to show that Ms. Stevens was a key witness against Coleman and was not cumulative, *Coleman*, 707 N.E. 2d at 487-88 [85 Ohio St. 3d at 140-41], are unreasonable fact findings in light of the record." (Objections, Doc. No. 201, PageID 2534-2535).

In part, this argument misrepresents what the Ohio Supreme Court found. It nowhere held that this evidence was "necessary." Rather, as against Coleman's claim that the evidence was irrelevant (Third Proposition of Law), it found that the evidence was relevant. *State v. Coleman*, 85 Ohio St. 3d at 140-41 (holding the evidence in question "tended to prove the essential elements of the specification," which is the test for relevance under Ohio R. Evid. 401.)

In part this argument fails even to attempt to refute the Ohio Supreme Court's finding that the evidence was not cumulative. The court held "[n]or do we find that the evidence was cumulative, as each police witness explained only those events which that witness directly observed." *Id.* If that holding is an unreasonable one in light of the record, where are Coleman's record references to show it is incorrect? None are offered in the Objections (see Doc. No. 201 at PageID 2535).

Coleman also objects that there should be no AEDPA legal deference in this case under 28 U.S.C. § 2254(d)(2) because the conclusion of the Ohio Supreme Court that this evidence was properly admitted is either contrary to or an unreasonable application of United States Supreme Court precedent (Objections, Doc. No. 201, PageID 2535).

In part, Coleman claims there should be no AEDPA legal deference because "[t]he Ohio Supreme Court did not review this evidence as 'other acts' evidence under the Rule 403 and Due

21

Process Clause standard for fundamental fairness." (Objections, Doc. No. 201, PageID 2535).

In making his argument to the Ohio Supreme Court in Proposition of Law No. III, Coleman

recited that admission of this evidence "denied his rights to a fair trial, due process of law and a

reliable determination of his guilt and sentence. . . ." (Merit Brief, Apx Vol. 4, p. 36.) As

federal authority, he cited only *Gardner v. Florida,* 430 U.S. 349 (1977). *Id.* at p. 37. The Ohio

Supreme Court cited neither Ohio R. Evid. 403(A) nor *Gardner* in its decision. However, a state

court decision can constitute an "adjudication on the merits" entitled to deference under 28 U.

S.C. §2254(d)(1) even if the state court does not explicitly refer to the federal claim or to

relevant federal case law. In *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770 (2011), the

Supreme Court held:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated
> on the merits" in state court, subject only to the exceptions in §§
> 2254(d)(1) and (d)(2). There is no text in the statute requiring a
> statement of reasons. The statute refers only to a "decision," which
> resulted from an "adjudication." As every Court of Appeals to
> consider the issue has recognized, determining whether a state
> court's decision resulted from an unreasonable legal or factual
> conclusion does not require that there be an opinion from the state
> court explaining the state court's reasoning. *See Chadwick v.
> Janecka*, 312 F.3d 597, 605-606 (CA3 2002); *Wright v. Secretary
> for Dept. of Corrections*, 278 F.3d 1245, 1253-1254 (CA11 2002);
> *Sellan v. Kuhlman*, 261 F.3d 303, 311-312 (CA2 2001); *Bell v.
> Jarvis*, 236 F.3d 149, 158-162 (CA4 2000) (en banc); *Harris v.
> Stovall*, 212 F.3d 940, 943, n. 1 (CA6 2000); *Aycox v. Lytle,* 196
> F.3d 1174, 1177-1178 (CA10 1999); *James v. Bowersox*, 187 F.3d
> 866, 869 (CA8 1999). And as this Court has observed, a state
> court need not cite or even be aware of our cases under § 2254(d).
> *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263
> (2002) (per curiam). Where a state court's decision is
> unaccompanied by an explanation, the habeas petitioner's burden
> still must be met by showing there was no reasonable basis for the
> state court to deny relief. This is so whether or not the state court
> reveals which of the elements in a multipart claim it found
> insufficient, for § 2254(d) applies when a "claim," not a
> component of one, has been adjudicated.

*Id.* at 784. "This Court now holds and reconfirms that §2254(d) does not require a state court to give reasons before its decisions can be deemed to have been 'adjudicated on the merits.'" *Id.* at 785. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.*" Brown v. Bobby*, 656 F.3d 325 (6th Cir. 2011), quoting *Harrington,*131 S. Ct. at 784-85. When the state court is silent as to its reasoning in denying a claim, "a habeas court must determine what arguments or theories supported or ... could have supported the state court's decision." *Walker v. McGuiggan*, 656 F.3d 311 (6th Cir. 2011), vacated on other *grounds Howes v. Walker*, 132 S. Ct. 2741, 183 L. Ed. 2d 32 (2012), *quoting Harrington,* 131 S. Ct. at 786. When the state court gives no explanation of its decision, "a habeas petitioner may meet his or her burden 'by showing there was no reasonable basis for the state court to deny relief.'" *Carter v. Mitchell*, 693 F.3d 555, 562 (6th Cir. 2012), *quoting Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 784 (2011). When a state court rules against a defendant in an opinion that rejects some of the defendant's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. ___, 133 S. Ct. 1088; 185 L. Ed. 2d 105 (2013).

In this case, since a federal claim as to this evidence was presented[2] to the Ohio Supreme

---

[2] On the other hand, if the federal claim was not "fairly presented" to the Ohio Supreme Court and therefore not decided by that Court on the merits, it would be procedurally defaulted for Coleman's failure to fairly present it. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law"

Court is must be deemed under *Harrington* to have decided that claim on the merits. And its decision was not an objectively unreasonable application of any of the Supreme Court precedent cited by Coleman.

- *Gardner v. Florida*, 430 U.S. 349 (1977), the only Supreme Court precedent cited in the Merit Brief, holds that a death sentence cannot be based on information in a presentence investigation report kept confidential. It does not speak to admission of evidence of prior crimes which are relevant to show motive for killing a witness.

- *Dowling v. United States*, 493 U.S. 432 (1990), held that collateral estoppel did not prevent admission of identity testimony in a bank robbery trial because identity had not been an issue in the prior burglary trial. Confronted with a Due Process claim related to Fed. R. Evid. 404(b), the Court refused to "constitutionalize" its rules about prior bad acts.

- *Estelle v. McGuire,* 502 U.S. 62 (1991), held in a child abuse case that evidence of prior injuries to the child was admissible to prove intent over a Due Process objection. The Court expressly disapproved of constitutionalizing state law regarding prior bad acts.

- *Old Chief v. United States,* 519 U. S. 172 (1997), interprets Fed. R. Evid. 403 and 404 on a direct criminal appeal within the federal system; it does not involve any constitutional decision.

- *Kelly v. California,* 555 U.S. 1020 (2008), is a denial of a petition for writ of certiorari.

---

does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same).

Given the paucity of federal argument in the Merit Brief, it is at least arguable that this Ground for Relief is procedurally defaulted.

Justice Stevens' dissent deals with the admission of victim impact videos in capital cases.

Thus Coleman has not pointed to any holding by the United State Supreme Court that is in point, much less one that was unreasonably applied by the Ohio Supreme Court.  The most that Coleman does is to cite "death is different" language from the Supreme Court and suggest that means this evidence should have been excluded (Objections, Doc. No. 201, PageID 2536, *citing Gardner, supra; Lockett v. Ohio*, 438 U.S. 586 (1978); and *Woodson v. North Carolina*, 428 U.S. 280 (1976).)  "'Clearly established federal law, as determined by the Supreme Court of the United States" refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Terry Williams v. Taylor*, 529 U.S. 362 at 412 (2000).  But the quite correct observation that capital punishment is different from all other forms of criminal punishment in its severity and finality has never been thought to mean that every criminal procedure rule or rule of evidence in a criminal case must, as a matter of constitutional law, be interpreted as strictly as possible against the State.  Admission of the prior drug case evidence to prove motive did not offend any clearly established constitutional precedent of the United States Supreme Court.

The Magistrate Judge therefore again respectfully recommends that this Ground for Relief be denied and a certificate of appealability be denied.


July 5, 2013.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).