UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TIMOTHY L. COLEMAN,

    PETITIONER,

v.

MARGARET BRADSHAW,
WARDEN,

    RESPONDENT.

CASE NO. 3:03-CV-299
CHIEF JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE MICHAEL R. MERZ

## OPINION AND ORDER

The undersigned has carefully reviewed the Report and Recommendation together with the Supplemental Report and Recommendation issued by the Magistrate Judge. This Court ADOPTS as its Opinion and Order these two Reports and Recommendations. While reaching the same conclusions contained in these two documents, the Court adds the following analysis.

### I.

The Magistrate Judge found that Petitioner's trial counsel was constitutionally deficient in the investigation and presentation of mitigating evidence in the second phase of the trial. (Report and Recommendation, p. 76-101.) Nonetheless, the Magistrate Judge concluded that the error was harmless, thereby denying Petitioner any right to relief from this Court.

The Government's case centered upon the theory that the victim, Melinda Stevens, was killed by Petitioner ("Coleman") to prevent her from testifying against him in a substantial drug

trafficking case. While obvious, the mitigation phase of the case began after the jury first concluded that Petitioner had killed a mother of five to silence her testimony against him.

The Magistrate Judge first found that trial counsel was deficient in failing to conduct a thorough investigation into mitigation evidence. The defense did not present a mental health professional, did not call the defendant's mother, sister or three mothers of his five children. The defense did not call as a witness a deputy sheriff, who would have testified that Petitioner was on good behavior while awaiting trial. Nor did a retained expert investigate potential alibi defenses or explore other suspects. Finally, another client of the defense counsel averred that the attorney referred to the Petitioner as "a typical stupid nigger" and the counsel "just went through the motions" in presenting the case. Nonetheless, the Magistrate Judge concluded that the Petitioner, having proven ineffective assistance of counsel, had failed to establish harm.

## II.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court set forth the controlling law in this case:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

To establish ineffective assistance of counsel, *Strickland* also directs:

> Judicial scrutiny of counsel's performance must be highly deferential . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

Finally, the Supreme Court reasoned:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.

### III.

This Court first looks to each singular claim of ineffective assistance of counsel and then considers the entirety of all claims to determine if counsel was constitutionally ineffective, and, if so, whether such conduct prejudiced the Petitioner.

The Court begins with the claim that defense counsel referred to Coleman as "a typical stupid nigger" and stated that the attorney was merely going through the motions of trial. The sole source of this claim is the affidavit of a John Stojetz, himself a client of the same attorney. *State of Ohio v. Coleman*, 2002 WL 31242241, p. 7 (Ohio App. 2 Dist. 2002) Coleman Apx., Vol. 20, page 181. At the time the affidavit of Stojetz was made, Stojetz was himself on death row. Further, defense counsel "emphatically denied all of Stojetz's allegations." *Id.* The state

trial court noted that defense counsel averred that he worked between three hundred fifty to four hundred hours on the case. *Id.* In a ruling affirmed by the state court of appeals, the trial court, having observed the conduct of the case, refused to credit Stojetz's affidavit, concluding that he was on death row, had the same attorney, and had a motive to further his interests in making the affidavit. *Id.* The Magistrate Judge noted that the decision of the state courts was "neither contrary to law nor an unreasonable application of *Strickland*." (Report and Recommendation, p. 68.) This Court agrees.

In mitigation, the defense presented no testimony from a mental health care expert. The record is clear, however, that a Doctor Earhard Eimer, a clinical psychologist, was retained prior to trial. (Record Volume 8, p. 67-71.) Dr. Eimer interviewed Coleman on four separate occasions and conducted three clinical tests. His report described the fact that Coleman grew up in an intact family. Dr. Eimer diagnosed a Compulsive Personality Disorder and noted that Coleman blames others for his conduct. *Id.* He also concluded that, "Mr. Coleman does not have a propensity toward violent crime, and that he is not a person who would have committed such a crime."

At trial, the defense counsel declined the opportunity to call Dr. Eimer. The trial court queried Coleman's attorney, after noting that the state court had authorized payment to Eimer. (Transcript, Vol. 8, p. 1297.)

The trial court later found that decision not to call Dr. Eimer was professionally reasonable. Dr. Eimer's view that Coleman would not have committed such a crime was diametrically opposed to the first verdict of the jury that Coleman had killed the victim to

prevent her from testifying.[1] The report also described Coleman as casting blame on others, a finding consistent with blaming and killing a witness about to testify against him. Finally, the report described Coleman's traditional family upbringing, at least moderate intelligence and, other than the diagnosis of Compulsive Personality Disorder, no significant mental health issues. The Magistrate Judge concluded that defense counsel was professionally reasonable in not calling Dr. Eimer to testify. The Court agrees.

The Petitioner also claims that counsel was deficient in not calling Coleman's mother and sister to testify. Coleman's father testified in mitigation. (Tr. Vol. 8, page 1290-1295.) While the testimony was quite brief, Coleman's father described him as "pretty much like other kids" growing up, that he loved his family, he would give a friend his heart, he would never provoke violence, and he was extremely kind. *Id.* Coleman's father also told the jury that his mother was too distraught to testify. *Id.* Coleman points to no additional evidence which could have been elicited from his mother or sister. Coleman's father explained the reasons that Coleman's mother did not testify. Coleman's sister could have given additional information, but only in a manner cumulative to the testimony of Coleman's father.

Coleman also contends that his counsel should have called the three mothers of his five children. The witnesses would have testified that he was a loving father. One of the three witnesses, Dana Strodes had previously reported to the police that Coleman had shot her in 1992. *State of Ohio v. Coleman*, 2002 WL 31242241, *8 (Ohio Ct. App. 2002). While this Court agrees with the Magistrate Judge that defense counsel was deficient in the investigation of

---

[1] Under Ohio case law, Dr. Eimer's opinion that Coleman could not have committed the crime was most likely inadmissible as an improper opinion essentially advising the jury as to resolution of the disputed facts. *State of Ohio v. Boston*, 46 Ohio St. 3d 108, 128-29 (Ohio 1989) overruled on other grounds by *State of Ohio v. Dever*, 64 Ohio St. 3d 401 (1992).

mitigation evidence, the record shows no prejudice to defendant from his counsel's failure to call the three mothers to testify.

Defense counsel did not call a deputy sheriff who would have testified that Coleman was on good behavior while in custody. The Magistrate Judge concluded that the failure to present such testimony would have emphasized Coleman's recruitment of a fellow inmate to kill the same victim. This Court again agrees with the assessment of the Magistrate Judge.

Finally, the record indicates that defense counsel hired an investigator, either at the start of the trial, or very close in time to the proceedings. Coleman contends that the untimely hire of an investigator demonstrated a failure to investigate. The Magistrate Judge viewed defense counsel as deficient in such a late hiring, which is the same view as the undersigned. As will be discussed further, the Petitioner can point to no event that a more timely investigation would have produced.

## IV.

For several reasons, this Court writes separately, after adopting the Magistrate Judge's recommendation. The first is the obvious – this is a death penalty case. Second, recognizing the state of the law following *Strickland*, this Court is most reluctant to find constitutional error, and then deem such deficiency to be harmless. Yet, that is what the record in this case compels.

The failure of defense counsel to investigate matters germane to the mitigation phase is well documented by the Magistrate Judge. Notwithstanding this serious shortcoming, the record is devoid of any information which, had a proper investigation been conducted, would have had any reasonable probability of influencing the jury's verdict. Further, as the record in this case demonstrates, the Petitioner has had ample opportunity to discover and offer any evidence indicating that he was prejudiced by his counsel's deficiencies.

Two decisions from the Sixth Circuit illustrate the issue before this Court. In *Combs v. Coyle*, 205 F.3d 269, 289 (6th Cir. 2000) the petitioner first demonstrated ineffective assistance of counsel for failing to investigate. The defense strategy was to show that he was highly intoxicated and lacked the requisite specific intent to murder. *Id.* Had the Defendant's counsel thoroughly investigated the factual circumstances, they would have learned from the defendant's mother that the petitioner's car was full of beer cans and wine coolers, all corroborative of the defense strategy. *Id.*

The Court also found counsel constitutionally deficient in failing to properly investigative by calling an expert who testified before the jury that the petitioner, although intoxicated, acted purposely and intentionally, all in opposition to the defense theory of the case. Combs could point to specific material facts which would have been discovered had a sufficient investigation been undertaken.

In contrast, the petitioner in *Morales v. Mitchell*, 507 F.3d 916, 938-39 (6th Cir. 2008) contended that his counsel was constitutionally ineffective by failing to investigate the Defendant's neurological impairments. The court held that even if counsel were deficit in failing to investigate:

> . . . Morale's new evidence, which at best indicates that he *might* suffer from some unidentified and unproven organic brain dysfunction, is insufficient to demonstrate that his trial counsel's allegedly deficient performance prejudiced his case. *Id.*

*See also Carter v. Mitchell*, 443 F.3d 517, 529 (6th Cir. 2006).

In this case, Coleman cannot point to any significant mitigation evidence that "at least one juror hearing that evidence would have been persuaded to impose a life, rather than a death, sentence." *Morales*, 507 F.3d at 936. Reluctantly, this Court agrees that counsel was constitutionally deficient, but finds such error to be harmless.

## V.

Based upon the foregoing, the Report and Recommendation, together with the Supplemental Report and Recommendation, is **ADOPTED** as the Order of this Court. The Petition is **DISMISSED WITH PREJUDICE**. For the reasons explained by the Magistrate Judge, this Court also issues a Certificate of Appealability as to Grounds Two and Five.

**IT IS SO ORDERED.**

_3-30-2015_
**DATE**

_/s/_
**EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE**